UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINO ANTONIO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>WINFRED M. KOKOR, et al.,<br><br>Defendants. | **CASE NO. 1:16-cv-00716-DAD-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO**<br><br>**(1) GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM; AND**<br><br>**(2) ENTER SUMMARY JUDGMENT SUA SPONTE ON PLAINTIFF'S NEGLIGENCE CLAIM**<br><br>**(Doc. 51)**<br><br>**FOURTEEN-DAY DEADLINE** |

 Plaintiff, a state prisoner, accuses Defendants Dr. Winfred Kokor and Nurse C. Stronach of denying him treatment for chronic left ankle pain in violation of the Eighth Amendment and California state law. Defendants now move for summary judgment on the medical indifference claim because they contend there is no dispute of material fact as to whether either was deliberately indifferent to Plaintiff's medical needs.

 Because the Court concludes there is no dispute of material fact, the Defendants are

entitled to summary judgment on the Eighth Amendment claim. Furthermore, the Court recommends that summary judgment be entered for the Defendants sua sponte on Plaintiff's state law negligence claim.

**I.     Plaintiff's Allegations**

In the complaint, Plaintiff alleges as follows:

Plaintiff, who suffers from long-term chronic ankle pain, has been prescribed morphine for pain management since 2008. In January 2015, Dr. Kokor abruptly discontinued Plaintiff's morphine medication and replaced it with Tylenol 3 despite a recommendation from the Medical Authorization Review Committee ("MRAC") that the morphine be tapered. In addition, Dr. Kokor continued the medication despite Plaintiff's repeated complaints of side effects.

On August 20, 2015, Plaintiff's intestinal wall "ruptured" due to severe constipation caused by Tylenol 3. On August 26, 2015, Dr. Kokor recommended Plaintiff for surgery to treat an inguinal hernia. Plaintiff underwent hernia surgery on January 8, 2016, and as of the date of the pleading remained wheelchair-bound. He still experiences ankle pain and continues to suffer adverse side effects, such as vomiting and urinary problems, from his current pain medication. At some point after the hernia surgery, Plaintiff was prescribed methadone for pain.

On July 20, 2015, Plaintiff complained to Nurse Stronach of severe pain related to the Tylenol 3, but she dismissed his pain as a "nuisance," said "I think you want to commit suicide," and referred Plaintiff for a mental health evaluation instead of examination by a medical doctor.

**II.    Relevant Procedural Background**

Plaintiff initiated this action on May 23, 2016, and is proceeding on his original complaint, which has been screened and found to state Eighth Amendment medical indifference claims against Dr. Kokor and Nurse Stronach. (Doc Nos. 1, 15.) Plaintiff was granted leave to amend, but he elected to proceed on the complaint as screened. (Doc No. 16.)

Defendants appeared on January 11, 2017, and filed their motion for summary judgment on November 14, 2017. (Doc Nos. 24, 51.) Plaintiff opposes the motion. (Doc No. 52.)

**III.   Undisputed Facts**

At all times relevant to this action, Plaintiff was a state inmate housed at California

Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Compl. ¶ 3. Dr. Kokor was employed at CSATF as a physician and surgeon. Decl. of Winfred Kokor, M.D., in Supp. of Defs.' Mot. Summ. J. (Doc No. 51 at 20-23) ¶ 3. Nurse Stronach was employed at CSATF as a registered nurse. Decl. of Christina Stronach, R.N., in Supp. of Defs.' Mot. Summ. J. (Doc No. 51 at 24-26) ¶ 2.

### A.     Dr. Kokor[1]

Plaintiff has been prescribed morphine for chronic left foot pain since October 2008. See Compl. Ex. A (Doc No. 1 at 28); Ex. C (Doc No. 1 at 83).

Dr. Kokor began treating Plaintiff in about August 2011 when Plaintiff first arrived at CSATF. Kokor Decl. ¶ 7. At the time, Dr. Kokor addressed Plaintiff's left ankle chronic pain and continued him on morphine. Id.

On January 15, 2015, the MRAC recommended that Plaintiff's morphine, which was set to expire three days later, be tapered off and Plaintiff started on Tylenol with codeine instead. Comp. Ex. A (Doc No. 1 at 27-28). This plan was recommended despite Dr. Kokor's request to renew the morphine prescription. Kokor Decl. ¶ 10; Compl. Ex. A (Doc No. 1 at 22).

Per Dr. Kokor, the MRAC's recommendation was a "framework recommendation," with it being "up to the individual provider to fine tune the treatment." Kokor Decl. ¶ 9. In Plaintiff's case, Dr. Kokor determined that, because morphine is metabolized to codeine (the active ingredient), it was unnecessary to taper it since both morphine and Tylenol 3 produce the same degree of analgesia (pain killing effect).[2] Id.

Between January and August 2015, Plaintiff filed several Health Care Services Request Forms ("7362 Form") related to his pain medication and pain in his ankle and abdomen. On January 16, 2015, Plaintiff complained about the sudden change to Tylenol 3, which he claimed

---

[1] Defendants do not submit any medical records in support of their motion, instead relying solely on Plaintiff's deposition and the declarations of Dr. Kokor and Nurse Stronach. In compiling the evidence of Plaintiff's interactions with the Defendants, the Court references medical records attached to Plaintiff's pleading. (See Doc No. 1.) It also relies on summaries of other interactions that are not in the record, but which are included in the responses to an inmate grievance Plaintiff filed complaining about his pain and prescribed medication. See Compl. Ex. A (Doc No. 1 at 19-26). Neither party disputes the accuracy of these summaries, and the Court finds it proper to consider these summaries on the pending motion. See Celotex, 477 U.S. at 324.

[2] Plaintiff disputes this fact but submits no supporting evidence and relies instead solely on his own opinion.

3

had caused him liver enzyme issues in the past. Compl. Ex. B (Doc No. 1 at 53). On February 27 and March 8, 2015, Plaintiff submitted separate 7362 Forms complaining about severe pain in his left ankle due to a broken pin; he also complained about pain in his groin, lower back, abdomen, and stomach. Id. (Doc No. 1 at 31-32). On April 15, 2015, Plaintiff complained that Tylenol 3 was not helping him, and it was causing him to suffer side effects and "strong constipation." Id. (Doc No. 1 at 56). On May 24, 2015, Plaintiff complained about constant pain, body aches and shivers, and ankle and back pain. Id. (Doc No. 1 at 57.) On June 22, 2015, Plaintiff complained about chronic pain in his left ankle, pain, and blisters.[3] Id. (Doc No. 1 at 58.) On July 3, 2015, Plaintiff complained that the "pain doubles up by the cramps and the burning in my stomach…." Id. (Doc No. 1 at 60). On July 17, 2015, Plaintiff complained of "strong upset stomach," vomiting, and cramping. Id. (Doc No. 1 at 61.) He also noted that "[t]he Tylenol 3 is hurting me and do not take away my pain on my left ankle and my stomach. Please help me!" Id. On August 11, 2015, Plaintiff's wrote that his left ankle pain and stomach issues continue. Id. (Doc No. 1 at 63.) On August 18, 2015, he again complained of ankle pain. Id. (Doc No. 1 at 65.)

During this period, Plaintiff was seen multiple times by Dr. Kokor[4]:

- On February 9, 2015, in response to the January 16, 2015, 7362 Form, Dr. Kokor noted Plaintiff's pain level as a 6-7/10 and offered him alternative medication, an adjuvant including Elavil at night, which Plaintiff refused. As a result, he was continued on Tylenol 3 with Salsalate. Compl. Ex. A (Doc No. 1 at 29).
- On March 12, 2015, Plaintiff complained to Dr. Kokor about constipation related to Tylenol 3. Dr. Kokor prescribed him fiber tabs, stool softeners, and Milk of Magnesia.
- On March 24, 2015, Dr. Kokor evaluated Plaintiff regarding his groin and abdominal pain, noting a history of kidney stones. He then prescribed Lactulose and stool softeners for the constipation.

---

[3] It appears that a portion of this 7362 Form was covered during photocopying. One sentence, for example, reads only as follows: ". . . not effective for my arthritis." While it is possible that Plaintiff was complaining once more about the ineffectiveness of Tylenol 3, the Court only considers those portions that are visible and legible.

[4] Unless otherwise specified, the details of Plaintiff's medical visits are gleaned from the summaries provided in the responses to his inmate grievances. See Compl. Ex. A (Doc No. 1 at 19-26).

4

- On April 13, 2015, Dr. Kokor again examined Plaintiff, directed him to continue with his prescribed medication, and found that a referral to an orthopedic specialist was not indicated. He also issued Plaintiff a back brace for his back pain and spasms.
- On July 9, 2015, Dr. Kokor noted that Plaintiff's pain control is adequate with no medical indication for morphine, his constipation has been responding to Lactulose, and an abdominal exam was unremarkable with a plan to treat abdominal pain symptomatically.

On August 18, 2015, Plaintiff heard a popping in his abdomen and saw a lump protruding. Pl.'s Dep. at 53:5-10, 54:18-22 (Doc No. 51 at 100-01.) On August 26, 2015, Dr. Kokor examined Plaintiff and diagnosed him with a reducible left inguinal hernia. Compl. Ex. B (Doc No. 1 at 68); Kokor Decl. ¶ 11. Though Plaintiff attributes the hernia to the constipation side-effects from the Tylenol 3, he admits that no health care provider has ever told him that. See Pl.'s Dep. at 42:20—43:5 (Doc No. 51 at 89-90). Per Dr. Kokor's medical notes, Plaintiff "alleges this [hernia] developed recently." Compl. Ex. B (Doc No. 1 at 68). In contrast, Plaintiff claims that he had been complaining to Dr. Kokor for months about abdominal pain, but he admitted during his deposition that there was no lump in his abdomen before this medical appointment. Decl. of Pl. in Opp'n to Defs.' Mot. Summ. J. (Doc No. 52 at 6-7) ¶ 4; Pl.'s Dep. at 55:17—56:16 (Doc No. 51 at 102-03).

Following the examination, Dr. Kokor deemed Plaintiff to be clinically stable with no signs of incarceration, obstruction or strangulation. Compl. Ex. B (Doc No. 1 at 68); Kokor Decl. ¶ 11. He then referred Plaintiff for a heniorrhapy and prescribed Docusate, fiber, and Lactulose for Plaintiff's constipation. Id. Dr. Kokor also noted Plaintiff's complaints about the ineffectiveness of Tylenol 3: "Since the change [to Tylenol 3], patient had complained most days stating the current regimen not alleviating his pain. He has been referred for MH counseling." Compl. Ex. B (Doc No. 1 at 68). Dr. Kokor then prescribed Nortriptyline with a follow-up in 3-4 weeks. Id. Nortriptyline is often prescribed and is effective for chronic pain. Kokor Decl. ¶ 11.

Plaintiff declined the Nortriptyline the next day because he did not believe it was appropriate for his physical pain since his independent medical research suggested it was solely for "neurotic pain." Compl Ex. B (Doc No. 1 at 69); Pl.'s Dep. at 73:1-22 (Doc No. 51 at 41). He then filed a 7362 Form on August 29, 2015, seeking a referral to a pain management specialist,

and another form on August 30, 2015, again complaining of pain with no remedy. See id. (Doc No. 1 at 70-71.)

On December 12, 2015, Dr. Kokor changed Plaintiff's pain medication from Tylenol 3 to methadone. Pl.'s Dep. at 45:21—26:1.

On January 8, 2016, Plaintiff underwent a hernia surgery. Compl. Ex. "D & E" (Doc No. 1 at 90).

### B. Nurse Stronach

On January 22, 2015, Nurse Stronach assessed Plaintiff in response to a 7362 Form. See Compl. Ex. A (Doc No. 1 at 22). Nurse Stronach found that Plaintiff had a steady gait with a left foot drop; he sought to have morphine resumed, which Nurse Stronach noted was a decision to be made by the Pain Committee; and Plaintiff's request for a referral for a doctor was denied because he was already scheduled to see one.

On April 15, 2015, Nurse Stronach met with Plaintiff regarding his continued complaints of ankle pain. See Compl. Ex. A (Doc No. 1 at 22). She made a note of his current medications and of Plaintiff's dissatisfaction with the change to Tylenol 3. She also wrote, "I/P [Inmate/Patient] threatened to go man down and threatened to sue Dr. Kokor. I/P claims his [sic] is constipated however he had a BM [Bowel Movement] today."

In response to the July 17, 2015, 7362 Form, Plaintiff was seen by Nurse Stronach on July 20, 2015. See Compl. Ex. B (Doc No. 1 at 61-62.) At this meeting, Plaintiff cried as he told Nurse Stronach of the severe pain in his ankle and cramps in his stomach. Compl. ¶ 20; Ex. B (Doc No. 1 at 61-62.) Nurse Stronach did not refer Plaintiff to another doctor because he was scheduled was to be seen for a follow-up appointment with a doctor in 10-25 days. She then wrote: "I/P crying in clinic appears sad, whiny voice. Psych referral done to [rule out] depression, anxiety due to I/P appears sad & anxious."

On August 12, 2015, in response to Nurse Stronach's referral, Plaintiff was seen by a mental health professional who documented Plaintiff's physical issues with his ankle pain and pain medication. Compl. Ex. B (Doc No. 1 at 64.) After examination, the mental health provider noted that Plaintiff was "focused on increasing problem solving and assertiveness skills to increase [his]

ability to meet medical needs." Id. Plaintiff was then directed to submit a referral to mental health in the future if he needs assistance. Id.

**IV. Legal Standards**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. See Fed. R. Civ. P. 56 (a), (c); Mora v. Chem-Tronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

7

1         Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson, 477 U.S. at 252. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; Wool, 818 F.2d at 1436.

        In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S. Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**V.**    **Discussion**

     **A.**    **Eighth Amendment**

          **1.**    **Legal Standard**

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad v. Corrections Corp. of America, 714 F.3d 1155,

1160 (9th Cir. 2013) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer at 834. Indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord Wilhelm, 680 F.3d at 1122; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." Farmer, 511 U.S. at 843 (citing Helling, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

Deliberate indifference is a high legal standard. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the

9

Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson, 290 F.3d at 1188).

**2. Analysis**

Defendants move for summary judgment on the ground that there is no dispute of material fact as to whether either was deliberately indifferent to Plaintiff's medical needs. The Court addresses each Defendant's arguments in turn.

**a. Dr. Kokor**

Plaintiff's claim against Dr. Kokor is two-fold. First, he contends that Dr. Kokor improperly discontinued his morphine medication abruptly despite the MARC's directive that it be tapered. Second, he contends that Dr. Kokor failed to properly and/or timely respond to his complaints of Tylenol 3's ineffectiveness, abdominal pain, and constipation.

Initially, the parties do not dispute, and the undersigned finds, that based upon the evidence presented, a reasonable juror could conclude that Plaintiff's chronic ankle pain and abdominal pain constitute an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.").

**i. Tapering of Medication**

Dr. Kokor declares that the MARC's decision to taper the morphine to Tylenol 3 was a recommendation and not a directive. That is, it was left "up to the individual provider to fine tune the treatment," which, in Plaintiff's case, Dr. Kokor believed did not require tapering since the active ingredient in both morphine and Tylenol 3 is codeine with the same degree of analgesia. Though Plaintiff disputes these statements, the ultimate burden of persuasion at trial is his, and he has submitted no evidence that Dr. Kokor's decision was medically unacceptable under the circumstances. Accordingly, summary judgment should be entered for Dr. Kokor on this claim.

10

### ii. Failure to Treat and/or Delayed Treatment

Consistent with Plaintiff's allegations, the record reveals that Plaintiff complained often about Tylenol 3's ineffectiveness, abdominal pain, and constipation. Contrary to his allegations, however, Dr. Kokor conducted several physical examinations to determine the source of Plaintiff's abdominal pain, examinations that ultimately proved unsuccessful and resulted in a plan to treat the problem symptomatically. When Plaintiff present with a lump in his abdomen, Dr. Kokor immediately diagnosed him with a hernia and referred him for surgery. Though Plaintiff attributes the source of his hernia to Tylenol 3, he admits that no medical provider has ever associated the two. As for Plaintiff's constipation, the record reveals that Plaintiff's complaints were considered at his medical appointments, and he was prescribed fiber tabs, stool softeners, Milk of Magnesia, and Lactulose to relieve the pain. Lastly, though Plaintiff repeatedly submitted 7362 Forms and complained during his medical appointments concerning Tylenol 3's alleged ineffectiveness, the undisputed facts establish that he was twice offered alternative medication to help control his pain, alternatives that Plaintiff refused. Thus, Dr. Kokor decided to continue him on Tylenol 3 with Salsalate until the December 2015 change to methadone.

At best, Plaintiff's claims in this case amount to a dispute as to the proper course of treatment. While Plaintiff is clearly dissatisfied with the level of care that he received from Dr. Kokor, the undisputed facts before the Court simply do not support a claim of deliberate indifference based on Plaintiff's claim of an unreasonable course of treatment or delay in medical care. For these reasons, Defendants' motion for summary judgment should be granted as to Dr. Kokor.

### b. Nurse Stronach

Plaintiff claims that, in light of his pain and complaints on July 20, 2015, Nurse Stronach should have sent him to emergency services at the institution instead of referring him for a mental health evaluation. See Pl.'s Dep. at 68:21—69:10 (Doc No. 51 at 115-16).

Nurse Stronach's notes of this encounter reveal that she provided medication to treat Plaintiff's complaints of diarrhea with a directive that he follow-up with a nurse within 72 hours if the symptoms persist. As for Plaintiff's complaints of pain, the notes reveal that Plaintiff was

already seen by a doctor on February 9, 2015, for "nonspecific ABD pain"; that he remained unhappy with Tylenol 3's effectiveness; and that he was scheduled for a physician follow-up in 10-25 days. While Nurse Stronach did not offer or prescribe other medication to treat Plaintiff's pain, Plaintiff acknowledges that Nurse Stronach could not have done so since she was required to follow Dr. Kokor's orders regarding Plaintiff's treatment plan. See Pl.'s Dep. at 57:9-18 (Doc No. 51 at 104). Lastly, because Plaintiff was crying, Nurse Stronach referred him for a psychiatric evaluation to "R/O [rule out] depression, anxiety…."

Although Plaintiff contends that Nurse Stronach should have referred him immediately to another doctor following this appointment instead of a mental health provider, the record reveals that Nurse Stronach was aware that Plaintiff was to be seen by a doctor soon, and Plaintiff submits no evidence that the protocol Nurse Stronach followed was medically unacceptable under the circumstances. Accordingly, summary judgment should be entered for Nurse Stronach.[5]

**B.  Negligence Claim**

As noted supra, Plaintiff brings claims against Dr. Kokor and Nurse Stronach for deliberate indifference under the Eighth Amendment and negligence under state law. Remaining now is Plaintiff's state law negligence claim, which is not the addressed in the Defendants' moving papers. Nonetheless, the Court finds that Defendants are entitled to summary judgment and will recommend so accordingly.

Pursuant to Federal Rule of Civil Procedure 56(f),

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

    (1) grant summary judgment for a nonmovant;

    (2) grant the motion on grounds not raised by a party; or

    (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

"District courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial." Norse v. City of Santa Cruz, 629 F.3d 966, 971 (9th Cir. 2010) (footnote

---

[5] Because the Court finds that the Defendants are entitled to summary judgment, it declines to consider their alternative qualified immunity argument.

12

omitted). "However, the procedural rules governing Rule 56 apply regardless of whether the district court is acting in response to a party's motion, or sua sponte." Norse, 629 F.3d at 971 (citing Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989); Ind. Port Comm'n v. Bethlehem Steel Corp., 702 F.2d 107, 111 (7th Cir. 1983)).

"Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." Norse, 629 F.3d at 972 (quoting Portsmouth Square, Inc. v. S'holders Protective Comm., 770 F.2d 866, 869 (9th Cir. 1985)). However, it is well settled that a "district court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion." In re Harris Pine Mills v. Mitchell, 44 F.3d 1431, 1439 (9th Cir. 1995) (quoting United States v. Grayson, 879 F.2d 620, 625 (9th Cir. 1989)).

Pursuant to California law, a public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). "'The elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)).

In a negligence action the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury. Jackson v. Ryder Truck Rental, Inc., 16 Cal. App. 4th 1830, 1846 (1993). The element of causation generally consists of two components. Id. at 1847. The plaintiff must show (1) the defendant's act or omission was a cause in fact of the plaintiff's injury, and (2) the defendant should be held responsible for negligently causing the plaintiff's injury. Id. The second component is a normative or evaluative one that asks whether the defendant should owe the plaintiff a legal duty of reasonable care under the circumstances of the case.

As set forth above, Plaintiff did not make any showing that the Defendants' conduct was medically unacceptable under the circumstances, and therefore there was no material issue of fact for trial on his deliberate indifference claims. In the context of that claim, a number of established

facts are fatal to Plaintiff's state law negligence claim.

First, to the extent Plaintiff claims he suffered ongoing pain resulting from Dr. Kokor's negligent failure to prescribe different pain medication, it has become evident that Dr. Kokor in fact twice offered different medication to Plaintiff, each of which Plaintiff himself refused. Thus, it was Plaintiff's own decision to decline the alternatives that breaks the causation element of Plaintiff's negligence claim.

Second, insofar as Plaintiff claims his hernia is attributable to the constipation side-effects from the Tylenol 3, Plaintiff has admitted that no health care provider has ever told him that. See Pl.'s Dep. at 42:20—43:5 (Doc No. 51 at 89-90). Without medical evidence linking the constipation to the hernia, and coupled with the evidence that the Defendants prescribed several types of medication to treat Plaintiff's constipation, Plaintiff also fails to meet the causation and breach of duty elements of a negligence claim.

Since Plaintiff has had a full and fair opportunity to litigate these issues and adequate time to develop the facts, the Court finds that the Defendants are also entitled to summary judgment on Plaintiff's negligence claim.

## VI. Conclusion

Based on the foregoing, the Court **RECOMMENDS** that Defendants' motion for summary judgment be granted as to Plaintiff's Eighth Amendment deliberate indifference claim, that summary judgment be entered sua sponte for Defendants on Plaintiff's state law negligence claim, and that this action be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within 14 days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d

1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated: **July 12, 2018**                    **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE